WESTERN UNION TELEGRAPH CO. *v.* ELIZABETH SPRATLEY.

TELEGRAPH COMPANY.    *Night message.   Delay.    Exemplary  damages.
    Contributory negligence.    Actual damages.*
    The sendee of a telegraphic message is not entitled, because of
    delay in its delivery, to recover from the telegraph company:
    (*a*) Exemplary damages in the absence of gross negligence, will-
    ful wrong and wanton disregard of plaintiff's rights; nor
    (*b*) Actual damages which resulted not from delay in the delivery
    of the message, but from plaintiff's failure to promptly answer
    it when it was delivered.

FROM the circuit court of Monroe county.

HON. EUGENE O. SYKES, Judge.

Mrs. Spratley, appellee, was plaintiff in the court below; the
Telegraph Company, appellant, was defendant there.   From a
verdict and judgment for $200 in plaintiff's favor defendant
appealed to the supreme court.

The plaintiff, a colored woman, resided at Aberdeen, Miss.
She was fairly well known in the community by the name of
Betsey Spratley, but was known to very few people by the name
of "Mrs. B. B. Spratley." Her husband, who died at Pensacola,
Fla., January 20, 1903, was named B. B. Spratley.   On the
night of that day a night message was delivered to the telegraph
company at Pensacola, Fla., for transmission to Aberdeen—
paid for by the sender—which read as follows:

"Mrs. B. B. Spratley, Aberdeen, Miss.—Your husband is
dead.   What about his body?   Answer.
                                        "[Signed]    MASON, 8:40 P. M."

One of the conditions on which the night message was re-
ceived by the company was to the effect that it was not required
to be delivered until business hours on the morning of the next
day.   When the telegraph office at Aberdeen opened at 8 o'clock
A. M., January 21st, the messenger boy took the message, which

had been properly written out by the operator, and proceeded to search for Mrs. B. B. Spratley. The telegraph messenger, operator and force did not know Betsey Spratley or Mrs. B. B. Spratley. The telegraph messenger industriously inquired for Mrs. B. B. Spratley, but did not find any one who knew her by that name. He returned to the telegraph office and reported that he was unable to find Mrs. B. B. Spratley, and the telegraph company sent a "service message" back to Pensacola asking for a better address. It did not cease, however, to make inquiry for Mrs. Spratley, and succeeded, before response came to the "service message," in finding her about 1 o'clock P. M., of January 21st. Mrs. Spratley did not make reply to the message through the messenger boy, but an hour or two after she had received the message, she dressed herself and went down town and conferred with a relative, who, at 4:45 P. M. on that day, sent a message, not by the appellant company, but by the Postal Telegraph Company, to Mason at Pensacola, requesting him to have the body of the deceased Spratley shipped to Aberdeen by express. When Mason received this request in Pensacola the body of the deceased Spratley had been buried about one hour, and as a consequence the remains were not transported to Aberdeen for burial. Other facts are stated in the opinion of the court.

*Harris & Powell,* and *E. O. Sykes, Jr.,* for appellant.

The Watson case, 82 Miss., 101, was decided upon its peculiar facts and has no application to the case at bar.

Now, the declaration sets forth as a cause of action that the message, although sent from Pensacola, Fla., on the 20th, when the death occurred, was not to be delivered earlier than the morning of the next ensuing business day. The declaration alleges that the telegraph company wrongfully and willfully refused to deliver the message until it was too late for the plaintiff to have her husband's body shipped to Aberdeen for interment. The proof shows that upon the morning of the 21st,

after the receipt of the message, not only was the messenger boy sent out to attempt to make delivery of the message, but the operator himself, the manager of the office at Aberdeen, attempted to locate the plaintiff.

The telegram announcing the death called for an answer, but the plaintiff did not answer it by the messenger boy who took it to her, but waited some time, an hour or more, then went to town and got another person to answer the message, and he went to the Postal Telegraph Company and sent the answer through that company.

Plaintiff was not known as Mrs. B. B. Spratley, but was known as Betsey Spratley. She lived in an obscure neighborhood and was unknown to the messenger boy who was searching for her.

The testimony in this case does not warrant the imposition of punitive damages.

It will be noted that the plaintiff paid nothing to the defendant for the message announcing the death of her husband. That was paid for by Mason. There was no evidence that the plaintiff was out a dollar, and the testimony is overwhelming that she received the telegram announcing the death of her husband in ample time for her, if she had acted with promptness, to have had the body shipped. The delay which resulted in the burial in Florida was the plaintiff's own delay, or the delay on the part of the Postal Telegraph Company, the agency which she had selected for the transmission of the answering message.

There must be some clear proof or circumstances of willful wrong to justify the imposition of punitive damages. Such are not shown in the case at bar.

*George C. Paine,* for appellee.

It required the opinions of the cases of *Magouirk* v. *Tel. Co.,* 79 Miss., 632, and *Watson* v. *Same,* 82 Miss., 101 (s. c., 33 So. Rep., 76), and *Pearce* v. *Same,* 82 Miss., 481 (s. c., 34 So.

Rep., 152), to explain the case of *Rogers* v. *Tel. Co.,* 68 Miss., 748.

This latter case has been a kind of *pons asinorum* to the legal fraternity in suits like the one at bar.

That case is a very involved and erudite one, and it requires careful analysis to disclose its intricate discrimination of the principles upon which the damages for mental suffering will be allowed. In the language of Hamlet, in order to be able to do this, a man must "know a hawk from a hand-saw."

This duty has been performed by Judge Whitfield in the above cited cases. In his opinion in these cases, he has clarified the distinction in a masterful way.

The case at bar is as strong and meritorious as the case of Watson. The fact that the appellee had lived in her own home within the corporate limits of Aberdeen for twenty-three years will compensate for any apparent difference in the retention of the telegram in the Watson case. The cases are quite similar in their leading facts, the only substantial difference being the delay in delivering the message. The appellee and her husband were among the prominent negroes in Aberdeen. Both were educated and refined negroes.

The message here was received during the evening of the 20th of January, 1903, and was contracted to be delivered within business hours of the morning of January 21, 1903.

Counsel does not question the fact that McDoughal, the manager of the appellant's office in Aberdeen, sent the message out by the messenger boy, Lamon.

McDoughal presumed the addressee was a negress, yet it is strange that he only inquired of two white men, comparatively strangers in Aberdeen, as to who she was and where she lived.

Lamon, the messenger boy who had the message, is shown to have been unworthy of belief.

Argued orally by *J. B Harris,* for appellant.

TRULY, J., delivered the opinion of the court.

The peremptory instruction asked by the appellant should have been granted. Neither the language of the message nor the terms under which it was sent indicated any cause for special urgency in its delivery. Appellee's residence was not known, and reasonable diligence was shown in the efforts of the manager of the appellant company in endeavoring to ascertain her whereabouts, so that the message might be delivered. The message was a "night message," was not intended to be delivered until business hours the next morning, was sent out by a messenger immediately upon the opening of the office, the manager himself made special inquiries and failing to locate the residence of appellee, sent a "service message" for a better address, and the message was in fact delivered before 1 o'clock of the day on which it was to have been delivered, and in ample time for appellee to have answered before her husband was buried, had she used due diligence. Conceding the truth of all of the testimony for appellee, the case made does not authorize the imposition of exemplary damages. The Watson case, 82 Miss., 101 (s. c., 33 So. Rep., 76), is totally different from the case at bar: Here there was no gross negligence, no willful wrong, no wanton disregard of appellee's rights, and, consequently, there could be no recovery of punitive damages.

                                             *Reversed and remanded.*